*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

TOM ROTTA,

        Plaintiff-Appellant,

v

CITY OF LUDINGTON,

        Defendant-Appellee.

UNPUBLISHED
July 17, 2026
9:19 AM

No. 378444
Mason Circuit Court
LC No. 2024-000199-CZ

Before: ACKERMAN, P.J., and REDFORD and FEENEY, JJ.

PER CURIAM.

In this pro se civil action, plaintiff-appellant, Tom Rotta, appeals as of right the trial court order granting summary disposition in favor of defendant-appellee, City of Ludington, and denying summary disposition for plaintiff. We affirm.

## I. FACTS

Plaintiff is a journalist who submitted three separate requests to the Ludington Police Department (LPD) for body-camera footage under Michigan's Freedom of Information Act (FOIA), MCL 15.231 *et seq.* This case arises out of plaintiff's challenge to the fees charged by defendant to complete each request.

On February 11, 2024, plaintiff submitted the first FOIA request to the LPD for body-camera and in-car footage related to a recent arrest. Defendant's initial response notified plaintiff that he was required to pay a deposit based on the estimated cost to complete his request, which defendant calculated using an out-of-date, $25-per-video fee. Plaintiff paid the deposit, and defendant began processing the request. Defendant then sent a supplemental response that identified additional, responsive videos. Defendant updated its cost estimate,[1] provided a short

---

[1] This updated cost estimate no longer included the out-of-date, $25-per-video fee.

description of each of the identified videos, and advised plaintiff that he could select what videos to produce to manage costs.

On February 18, 2024, plaintiff submitted the second FOIA request for body-camera footage relating to two recent arrests. Defendant responded, requiring a deposit for the estimated cost to complete the request. Again, defendant advised plaintiff that he could select what videos he wanted produced.

On March 5, 2024, plaintiff appealed defendant's first FOIA response to the Ludington City Council (the Council), asserting that the city attorney and LPD had committed extortion. The Council denied plaintiff's appeal.

On March 31, 2024, plaintiff submitted the third FOIA request for body-camera footage related to another recent arrest. Defendant again responded by requiring a deposit for its estimated cost to complete the request.

On April 13, 2024, plaintiff submitted another administrative appeal to the Council, arguing that defendant's imposed fees for all three FOIA requests were unlawful. The Council concluded that the fees did not exceed the allowable amount under FOIA.

Plaintiff then turned to the circuit court, filing a pro se complaint in this case, asserting that defendant violated FOIA by charging an impermissible fee for each request. Plaintiff additionally moved to disqualify Mason Circuit Court Judge Susan Kasley Sniegowski, arguing that Judge Sniegowski may be affected by "subliminal bias" for defendant, which the trial court denied. Defendant moved for summary disposition pursuant to MCR 2.116(C)(10) (no genuine issue of material fact), and plaintiff in turn moved for summary disposition.[2] After *in camera* review of the unredacted videos that were identified by defendant as responsive to plaintiff's three FOIA requests, the trial court granted defendant's motion for summary disposition and dismissed the complaint. Plaintiff now appeals.

## II. MOTION FOR SUMMARY DISPOSITION

On appeal, plaintiff first argues that the trial court erred by granting summary disposition in defendant's favor, as opposed to plaintiff's favor. We disagree.

## A. PRESERVATION AND STANDARD OF REVIEW

Because this issue was raised, addressed, and decided by the trial court through the parties' opposing motions for summary disposition, it is preserved for appellate review. See *George v Allstate Ins Co*, 329 Mich App 448, 453; 942 NW2d 628 (2019).

A trial court's decision regarding a motion for summary disposition is reviewed de novo, and its factual findings underlying its decision are reviewed for clear error. *DeRuiter v Byron Twp*, 505 Mich 130, 139; 949 NW2d 91 (2020). Likewise, a trial court's conclusion when applying

---

[2] Plaintiff did not specify the court rule basis for his summary disposition motion.

FOIA is reviewed de novo, and its factual findings in support of its conclusion are reviewed for clear error. *Herald Co, Inc v Eastern Mich Univ Bd of Regents*, 475 Mich 463, 471-472; 719 NW2d 19 (2006). Clear error exists if we are "left with the definite and firm conviction that a mistake has been made by the trial court." *Id*. at 472. When the application of FOIA involves discretionary determinations, we review the trial court's decision for an abuse of discretion. *Id*. An abuse of discretion occurs when the trial court's decision falls outside the range of principled outcomes. *Id*.

Summary disposition may be granted if "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." MCR 2.116(C)(10). "In evaluating a motion for summary disposition brought under [MCR 2.116(C)(10)], a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties . . . in the light most favorable to the party opposing the motion." *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). If "the moving party has supported its position by documentary evidence," then the nonmoving party must demonstrate "that a genuine issue of material fact exists." *Abbott v John E Green Co*, 233 Mich App 194, 197-198; 592 NW2d 96 (1998). "If the opposing party fails to present documentary evidence establishing the existence of a material factual dispute, summary disposition may properly be granted." *Id*. at 198. "Speculation is insufficient to create an issue of fact." *Anderson v Transdev Servs, Inc*, 341 Mich App 501, 507; 991 NW2d 230 (2022) (quotation marks and citation omitted).

## B. FOIA FEES

Plaintiff first asserts that defendant's calculated fees were unlawful under FOIA and unresponsive to plaintiff's FOIA request.[3] We disagree. Defendant's method of calculating fees was lawful, and the final fee charged for plaintiff's first FOIA request and the estimated fee for plaintiff's second and third FOIA requests were proper.

Although FOIA allows a public body to charge a fee in connection with a FOIA request, "[a] public body is not at liberty to simply choose how much it will charge for records." *Arabo v Mich Gaming Control Bd*, 310 Mich App 370, 390; 872 NW2d 223 (2015) (quotation marks and citation omitted). The fee for a public record search is limited to the "*actual* incremental cost of duplication or publication including labor, the cost of search, examination, review, and the deletion

---

[3] As an initial matter, defendant argues that review of plaintiff's first FOIA request is time-barred because the Council first considered that request on March 11, 2024—more than 45 days before plaintiff filed his complaint in the trial court. An individual may contest a fee charged by a public body to fulfill a FOIA request, but "[t]he action must be filed within 45 days after . . . determination of an appeal to the head of a public body." MCL 15.240a(1)(b). But the Council later addressed plaintiff's appeal of *all three* FOIA requests at its April 22, 2024 meeting. Although the Council had previously considered plaintiff's first FOIA request, MCL 15.240a does not limit a public body's reconsideration of an issue, and defendant points to no provision that would suggest such a limitation. Accordingly, because plaintiff's complaint was filed within 45 days of the April 22, 2024 meeting, the trial court properly considered plaintiff's claims regarding each FOIA request. See MCL 15.240a(1)(b).

and separation of exempt from nonexempt information as provided in [MCL 15.244]." MCL 15.234(1) (emphasis added). But a public body may charge "a good-faith deposit" on the basis of a "fee estimate" that exceeds $50. MCL 15.234(8).

Plaintiff asserts that defendant's responses were overbroad and contributed to the high fee estimate. Whether the content of the identified videos is related to the arrests and investigations identified by plaintiff in his FOIA requests is a question of fact that we review for clear error. See *Herald Co*, 475 Mich at 471-472. Defendant provided this Court with a copy of the videos reviewed by the trial court *in camera*. First, with respect to plaintiff's first FOIA request, each of the 14 videos identified was related to the relevant arrest and resulting investigation. Second, with respect to plaintiff's second FOIA request, each of the seven videos identified was related to the relevant arrests and resulting investigations. Third, with respect to plaintiff's third FOIA request, each of the four videos identified was related to the relevant arrest. Therefore, the trial court did not clearly err by concluding that the identified videos were responsive to plaintiff's FOIA requests. See *id*.

Turning to the lawfulness of defendant's imposed fees, plaintiff paid the deposit for his first FOIA request, and defendant processed that request. Therefore, the relevant issue on appeal—regarding plaintiff's first FOIA request—is whether the final fee was compliant with MCL 15.234. The final fee must be limited to the actual costs associated with producing the response. See MCL 15.234(1). LPD Captain Michael Haveman attested that the actual amount of time spent processing plaintiff's first FOIA request took longer than defendant had anticipated when calculating its estimated fee; however, defendant did not increase the fee to reflect the actual time spent. Because the final fee was less than the fee would be for the actual time spent processing the request, the fee was compliant with MCL 15.234(1).

Because plaintiff did not pay the deposit for his second and third FOIA requests, the relevant issue on appeal—regarding those requests—is whether the fee estimates complied with MCL 15.234.

A "good-faith deposit" may be calculated based on "a good-faith calculation of the total fee described in [MCL 15.234(4)]." MCL 15.234(8). MCL 15.234(4) requires the public body to establish publicly available procedures to implement any fees charged pursuant to MCL 15.234. At the time of plaintiff's three FOIA requests and defendant's responses, the Ludington FOIA policy provided that if the cost of responding to a FOIA request would take more than one half-hour, then defendant "may" charge a fee for responding to the request. The policy dictated that the fee may include the cost of searching, locating, examining, reviewing, and separating exempt material. The policy further stated that defendant "will charge the hourly wage of its lowest-paid employee capable of performing" the relevant tasks required to respond to a FOIA request.

Captain Haveman attested that he was the only LPD employee who had been trained to review FOIA material for content that is exempt from disclosure. Accordingly, defendant's fee estimates were calculated based on Captain Haveman's wage scale. As the only employee capable of reviewing FOIA material for potential exemptions, Captain Haveman was necessarily the "lowest-paid employee capable of" reviewing the requested videos for potentially exempt

-4-

information. See MCL 15.234(1)(b). Therefore, the use of Captain Haveman's wage when calculating the estimated fees was consistent with both MCL 15.234(1)(b) and the Ludington FOIA policy.

Captain Haveman estimated that every hour of body-camera footage would take three hours to review and process in a FOIA response and that the review of in-car video would be equal to the length of the video, which aligned with the Michigan State Police standard estimate.

Defendant's response to plaintiff's second FOIA request estimated a total review time of about 16 hours and 15 minutes for 31 minutes of in-car footage and 5 hours and 15 minutes of body-camera footage. This estimated review time is consistent with the videos and equal to Captain Haverman's attested estimation concerning body-camera footage and in-car footage.[4] Therefore, the record supports that defendant's response to plaintiff's second FOIA request constituted a "good-faith calculation of the total fee . . . ." MCL 15.234(8).

Defendant's response to plaintiff's third FOIA request estimated a total of two hours of review by the police captain. Defendant proffered approximately one hour of videos to the trial court and this Court for review. Though not explicitly calculated, the review time is less than the 3:1 ratio supported by Captain Haveman's affidavit. Therefore, the record supports that defendant's response to plaintiff's third FOIA request constituted a "good-faith calculation of the total fee . . . ." MCL 15.234(8).

The foregoing analysis assumes that defendant was entitled to charge a fee. Notably, a public body may not charge a fee for the cost associated with completing a FOIA request "unless failure to charge a fee would result in *unreasonably high costs* to the public body . . . ." MCL 15.234(3) (emphasis added). On appeal, plaintiff does not directly raise the issue whether response to his FOIA requests would result in unreasonably high costs. But to the extent that plaintiff's argument suggests that a fee was unwarranted under MCL 15.234(3), we conclude that—considering plaintiff's expansive requests and Captain Haveman's attested review estimation—defendant was permitted to charge a fee. See MCL 15.234(3).

Overall, defendant was permitted to charge a fee for production of the requested videos, see MCL 15.234(3), and defendant's method of calculating its estimated fees was proper, see MCL 15.234(1)(b). The final fee charged for plaintiff's first FOIA request was proper. See MCL 15.234(1). And defendant properly provided a good-faith estimate for plaintiff's second and third FOIA responses. See MCL 15.234(8).

---

[4] To clarify, three times the body-camera footage length is equal to 15 hours and 45 minutes. The total of three times the body-camera footage and the in-car footage amounts to 16 hours and 15 minutes.

## C. COSTS, FINES, AND DAMAGES

Plaintiff next asserts that defendant acted in bad faith such that civil fines were warranted. In his request for relief, plaintiff also asserts that punitive damages and costs were warranted. We disagree.

A public body that violates FOIA may be subject to a civil fine if it "willfully and intentionally failed to comply with [FOIA] or otherwise acted in bad faith . . . ." MCL 15.240b.

In this case, in light of plaintiff's broad FOIA requests, the videos that defendant identified were reasonably responsive to plaintiff's requests. Notably, defendant provided plaintiff with the opportunity to narrow his FOIA request to reduce costs.[5] Plaintiff submitted no evidence to suggest that defendant selected videos in bad faith. Although defendant's initial response to plaintiff's first FOIA request charged an outdated, $25-per-video fee, defendant corrected that mistake in its supplemental response. Plaintiff has produced no evidence to suggest that such an error was anything other than administrative oversight later corrected by defendant before plaintiff's appeal to the Council. Therefore, defendant did not act in bad faith such that a civil fine was warranted. See *id*.

Next, a public body that violates FOIA may be subject to punitive damages if it "has arbitrarily and capriciously violated [FOIA] by charging an excessive fee . . . ." MCL 15.240a(7). Again, although defendant committed a mistake when initially calculating the fee for plaintiff's first FOIA request, defendant has demonstrated that it mistakenly fulfilled defendant's request on the basis of its outdated FOIA policy, and defendant fixed its mistake before plaintiff's appeal to the Council. Therefore, defendant did not act arbitrarily or capriciously such that punitive damages were warranted. See *id*.

## III. MOTION TO DISQUALIFY

Finally, plaintiff asserts that the trial court erred by denying his motion to disqualify Judge Sniegowski.[6] We disagree.

---

[5] Despite receiving this option to narrow his original search parameters, plaintiff provides no evidence that he clarified in writing or otherwise the specific arrest videos he wanted.

[6] As an initial matter, defendant asserts that this Court does not have jurisdiction to review the trial court's order regarding defendant's motion to disqualify because plaintiff failed to attach a copy of the order to his claim of appeal as dictated by MCR 7.204(C)(1). But plaintiff properly provided "a copy of the judgment or order appealed from," which is the trial court's final order and opinion on the parties' cross-motions for summary disposition. See MCR 7.202(6)(a)(*i*); MCR 7.204(C)(1). "It is generally the case that interlocutory orders are reviewable as of right in conjunction with any appeal of right following entry of a final order." *Attorney General v Mich Pub Serv Comm*, 237 Mich App 27, 39-40; 602 NW2d 207 (1999). Therefore, the trial court's earlier order regarding plaintiff's motion for disqualification is properly before this Court. See *id*.

## A. PRESERVATION AND STANDARD OF REVIEW

Because this issue was addressed by the trial court, it is preserved for appellate review. See *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, 347 Mich App 280, 289; 14 NW3d 472 (2023). "When this Court reviews a motion to disqualify a judge, the trial court's findings of fact are reviewed for an abuse of discretion; however, the applicability of the facts to relevant law is reviewed de novo." *Armstrong v Ypsilanti Charter Twp*, 248 Mich App 573, 596; 640 NW2d 321 (2001).

## B. ANALYSIS

As a procedural matter, plaintiff failed to support his motion for disqualification with an affidavit as required by MCR 2.003(D)(2). But even considering the factual grounds raised by plaintiff, we nonetheless conclude that the trial court properly denied plaintiff's motion.

Disqualification of a trial court judge is governed by MCR 2.003. A trial court judge "is presumed unbiased, and the party asserting otherwise has the heavy burden of overcoming the presumption." *TT v KL*, 334 Mich App 413, 431; 965 NW2d 101 (2020) (quotation marks and citation omitted). To demonstrate that a "judge is biased or prejudiced for or against a party or attorney," MCR 2.003(C)(1)(a), the moving party must show "actual bias or prejudice," *Cain v Dep't of Corrections*, 451 Mich 470, 495; 548 NW2d 210 (1996).

"A showing of actual bias is not necessary to disqualify a judge where experience teaches that the probability of actual bias . . . is too high to be constitutionally tolerable." *Van Buren Twp v Garter Belt Inc*, 258 Mich App 594, 599; 673 NW2d 111 (2003) (quotation marks and citation omitted). One such situation when the probability of actual bias may be high is when "the judge has been the subject of personal abuse or criticism from the party before him . . . ." *Id*. at 600. "The mere fact that a judge has been subjected to press criticism in connection with a case or a party does not necessarily require the judge's disqualification." *Id*. (quotation marks and citation omitted). For example, when no evidence contradicts a judge's assertion that he or she "had not taken long-forgotten criticism personally," then the judge need not be disqualified. See, e.g., *id*. Finally, "judicial rulings, in and of themselves, almost never constitute a valid basis for a motion alleging bias, unless the judicial opinion displays a deep-seated favoritism or antagonism that would make fair judgment impossible and overcomes a heavy presumption of judicial impartiality." *Armstrong*, 248 Mich App at 597 (quotation marks and citation omitted).

First, although plaintiff asserted that Judge Sniegowski may have "subliminal bias" for defendant, plaintiff presented no evidence of "actual bias or prejudice" in favor of defendant or against plaintiff. *Cain*, 451 Mich at 495. Judge Sniegowski explained that she was no longer required to recuse herself as defendant's former employee[7]. She suggested that any previous conflict was further minimized because she was no longer a City of Ludington resident. Plaintiff does not assert that either Judge Sniegowski or her husband had an economic interest in the present case. See MCR 2.003(C)(1)(f). Although Judge Sniegowski's husband was an employee for the Department of Public Works for the City of Ludington, he was not involved with the LPD.

---

[7] The judge stated that she was no longer the FOIA administrator for the City of Ludington.

Therefore, Judge Sniegowski's husband was not a party to the present case and did not have a "more than de minimis interest that could be substantially affected" by the outcome of a FOIA fee challenge. MCR 2.003(C)(1)(g)(*i*) and (*iii*).

Plaintiff later raised additional concerns that Judge Sniegowski's husband was a potential witness for a criminal trespass charge against plaintiff revolving around a deer cull organized by the Department of Public Works. But if Judge Sniegowski's husband were called as a witness, it would be in the unrelated criminal case, not the present FOIA matter. Therefore, the unrelated potential testimony does not warrant disqualification in the present case. See MCR 2.003(C)(1)(g)(*iv*).

Next, plaintiff asserts that he had written three articles criticizing Judge Sniegowski in his blog, *The Ludington Torch*. Judge Sniegowski indicated that she had not read plaintiff's blog. Plaintiff read his articles about Judge Sniegowski into the record. Judge Sniegowski stated that plaintiff's blog constituted his opinion on her judicial decisions and that she did not consider it a "personal attack." Although "personal abuse or criticism from the party before" a trial court judge may support that the probability of bias is high enough to warrant disqualification absent a showing of actual bias, "[t]he mere fact that a judge has been subjected to press criticism in connection with a case or a party does not necessarily require the judge's disqualification." *Van Buren Twp*, 258 Mich App at 599-600 (quotation marks and citation omitted). When no evidence contradicts a judge's assertion that he or she "had not taken long-forgotten criticism personally," then the judge need not be disqualified. *Id*. at 600. Therefore, plaintiff's articles criticizing Judge Sniegowski did not warrant disqualification. See *id*.

Plaintiff further asserts that Judge Sniegowski's rulings throughout the proceedings support that she should have been disqualified. Specifically, plaintiff asserts that the trial court should not have allowed discovery or prolonged the duration of the case in violation of MCL 15.240a(5). "[J]udicial rulings, in and of themselves, almost never constitute a valid basis for a motion alleging bias, unless the judicial opinion displays a deep-seated favoritism or antagonism that would make fair judgment impossible and overcomes a heavy presumption of judicial impartiality." *Armstrong*, 248 Mich App at 597 (quotation marks and citation omitted). Plaintiff has not presented any evidence that suggests that the trial court's decisions regarding discovery and scheduling were made out of a deep-seated favoritism or antagonism. *Id*. In contrast, the trial court's reasoning for its discovery decision suggests that the trial court underwent an honest analysis of the Michigan Court Rules, which plaintiff does not appeal directly. The 17-month case included discovery, motions practice, and the trial court's *in camera* review of the disputed videos and analysis of the cross-motions for summary disposition. Plaintiff does not otherwise present evidence that a 17-month case length violated the expediency requirement of MCL 15.240a(5) such that it supported that Judge Sniegowski was biased. See *Cain*, 451 Mich at 495; *Armstrong*, 248 Mich App at 597.

Accordingly, Judge Sniegowski did not err by denying plaintiff's motion to disqualify her. See MCR 2.003(C)(1); *Cain*, 451 Mich at 495; *Van Buren Twp*, 258 Mich App at 600; *Armstrong*, 248 Mich App at 597.

Affirmed.

/s/ Matthew S. Ackerman
/s/ James Robert Redford
/s/ Kathleen A. Feeney